## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

IN RE )
) **Case No. 08-00629-TLM**
**LIFESTYLE FURNISHINGS, LLC,** )
) **Chapter 7**
Debtor. )
_____ )

## MEMORANDUM OF DECISION

### I.    INTRODUCTION

This matter is before the Court on Wells Fargo Bank's ("Wells Fargo") motion to compel abandonment of certain funds held by the chapter 7 trustee ("Trustee").  Doc. No. 67 ("Motion").  The Court took the matter under advisement after an August 20, 2009 hearing.  Upon considering the evidence and arguments submitted, the Court will deny Wells Fargo's motion.  This Memorandum Decision constitutes the Court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 9014, 7052.[1]

### II.    FACTS[2]

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] At the hearing, the parties stipulated to the admission of Trustee's Exhibits 300-307 and Wells Fargo's Exhibits 200-202 and requested that the Court consider as evidence their
(continued...)

On April 7, 2008, Lifestyle Home Furnishings, LLC ("Debtor") filed a voluntary petition for chapter 7 relief. Doc. No. 1.[3] Four days later, Debtor filed the required schedules, including schedule B which disclosed as Debtor's personal property two checking accounts – a payroll account containing $75.56, and a general business account containing $39,960.20. Doc. No. 12. Debtor's schedules also indicated that it owed Wells Fargo approximately $475,060.00, of which $325,060.00 was secured debt. *See id.* at schedules D and F.

On April 8, 2008, upon learning of Debtor's bankruptcy, Wells Fargo placed an administrative "hard hold" on Debtor's general business account to block withdrawals and hold the funds in order to exercise a possible right of set-off.[4] *See* Ex. 300. Wells Fargo did not place a hold on Debtor's payroll account. *See id.* Around that same time, Trustee contacted Wells Fargo and demanded turnover of the funds in Debtor's checking accounts. *See* Ex. 301. In response to this demand, on April 18, 2008, Wells Fargo issued two cashier's checks to Trustee, for $23,795.00 and $100.00, which represented the funds in Debtor's

---

[2](...continued)
Stipulated Facts, filed August 14, 2009. Doc. No. 77. In addition, Robert Stallsmith and Trustee Jeremy Gugino testified.

[3] The Court takes judicial notice of its files and records, Fed. R. Evid. 201, in order to outline the procedural history of the case.

[4] A bank may place a temporary administrative hold or freeze on a debtor's account pending resolution of the bank's right of setoff without running afoul of the automatic stay provisions of § 362. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 19-21 (1995).

MEMORANDUM OF DECISION - 2

general business and payroll accounts, respectively. *See* Ex. 307. This was done despite the hold that had been placed on the $23,795.00 general business account. Stallsmith, who handled Debtor's account with Wells Fargo as vice president of the credit management group, testified at the hearing that the release of the funds was unauthorized and the result of a clerical error. Stallsmith discovered the error sometime in early May, 2008, and subsequently notified Wells Fargo's attorneys.

On April 15, 2008, Wells Fargo filed a Motion for Stay Relief, Doc. No. 16, seeking relief to exercise its state law remedies regarding Debtor's inventory, equipment, accounts, and contract rights. *See id.* The following day, Wells Fargo filed a proof of claim indicating a total claim of $472,596.55 arising from a promissory note and a commercial guaranty, with a secured portion of $448,256.23, and an unsecured portion of $24,340.32. Claim 3-1. No objections to the April 15 motion were filed and the Court granted stay relief to Wells Fargo on May 6, 2008.[5] *See* Doc. No. 29. Debtor's inventory and equipment was subsequently sold at auction, generating net proceeds of $179,678.21. *See* Claim 3-2.

Trustee advised Wells Fargo's attorneys via a letter dated July 16, 2008, that he intended to challenge the perfection of Wells Fargo's security interest in

---

[5] Wells Fargo and Trustee reached an understanding whereby Trustee would refrain from objecting to the April 15 motion for stay relief and Wells Fargo would hold the proceeds from sale of Debtor's hard assets pending a determination of the validity of Wells Fargo's asserted security interest in the property.

MEMORANDUM OF DECISION - 3

the equipment and inventory owned by Debtor. Ex. 302. Counsel for Wells Fargo responded in a letter dated July 30, 2008. Ex. 303. That letter included the following paragraphs:

> Second, even absent fraud, the funds you received from the debtor's bank account were subject to both a banker's lien and a right of setoff irrespective of any Article 9 lien, and were not subject to turnover. *In re Lough*, 163 B.R. 586, 588 (Bankr. D. Idaho 1994). The bank had placed an administrative freeze on the funds in that account and they would not have been surrendered to you absent a clerical error.
>
> . . .
>
> That said, Wells Fargo understands the risks and expenses associated with litigation and desires to avoid them when it can. Accordingly, I have been authorized to propose that this matter be resolved by both parties agreeing to retain the sums they have collected to date, i.e., the bank will accept the proceeds of the auction and the trustee will keep the funds from the debtor's bank account, cash on hand, and collected postpetition accounts.

*Id.*

On September 26, 2008, Wells Fargo amended its proof of claim to reflect the auction proceeds, listing a remaining "unsecured" claim of $292,918.34. *Id.* Trustee eventually rejected Wells Fargo's settlement offer as proposed in the July 30 letter and commenced an adversary proceeding, *Gugino v. Wells Fargo Bank Northwest, N.A.*, Adv. No. 08-06103-TLM, to avoid Wells Fargo's lien. *See* Doc. No. 77 at paras. 7-8.

Debtor's estate has not been fully administered and Trustee has yet to pay any claims. *See id.* at para. 17.

MEMORANDUM OF DECISION - 4

### III.    DISCUSSION AND DISPOSITION

Wells Fargo seeks an order under § 554(b) compelling the Trustee to abandon the funds he received on April 18, 2008. Section 554(b) provides that "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate *or that is of inconsequential value and benefit to the estate*." (Emphasis added). Wells Fargo contends that the funds are "of inconsequential value and benefit to the estate" because it has a banker's lien and a right of setoff in the funds.[6] Trustee objects.

#### A.    Banker's Lien

Idaho Code § 45-808 grants a banker "a general lien, dependent on possession, upon all property in his hands, belonging to a customer, for the balance due to him from such customer in the course of the business." A bank has a banker's lien on deposited funds for the amount of a debt owed it by the depositor. *In re Lough*, 163 B.R. 586, 587-88, 94 I.B.C.R. 19, 20 (Bankr. D. Idaho 1994); *Smith v. Idaho State Univ. Fed. Credit Union*, 760 P.2d 19, 22 (Idaho 1988) (quoting *First Interstate Bank of Idaho v. Gill*, 701 P.2d 196, 197

---

[6] In its initial Motion, Wells Fargo also claimed that it had a perfected security interest in the funds under Article 9 of the UCC. Wells Fargo has since abandoned that argument, agreeing with Trustee that any Article 9 issue should instead be decided in Trustee's adversary proceeding against Wells Fargo, Adv. No. 08-06103-TLM. *See* Doc. No. 72 at 3.

MEMORANDUM OF DECISION - 5

(Idaho 1985)).[7]

Wells Fargo does not have a banker's lien on the subject funds. A banker's lien under Idaho Code § 45-808 is dependent on possession. Wells Fargo lost possession of the funds when it turned them over to Trustee. Having done so, it was obligated to take prompt action, including filing a motion for relief from the automatic stay and requesting adequate protection, to preserve its possessory lien rights. *See Boggan v. Hoff (In re Boggan)*, 251 B.R. 95, 101 (9th Cir. BAP 2000) (quoting *Expeditors Int'l of Wash., Inc. v. Colortan, Inc. (In re Colortan, Inc.)*, 210 B.R. 823 (9th Cir. BAP 1997), *aff'd in part and vacated in part on other grounds*, 165 F.3d 35 (9th Cir. 1998)). This it failed to do. Wells Fargo waited over a year to take action in this Court to assert or preserve its possessory lien rights in the funds. Because it now lacks possession of the funds and it has unnecessarily delayed asserting its rights, Wells Fargo may not now seek a banker's lien upon the funds Trustee holds.

### B.  Right to Setoff

Wells Fargo also contends that its right of setoff renders the funds of

---

[7] Trustee cites *Meyer v. Idaho First Nat'l Bank*, 525 P.2d 990 (Idaho 1974) for the proposition that Wells Fargo's claim of a banker's lien is nothing more than a claim to a right of setoff. In *Meyer*, the court concluded that because a bank technically becomes the owner of deposited funds, those funds no longer "belong[] to a customer" and are therefore not subject to a banker's lien under Idaho Code § 45-808. However, *Meyer* is inconsistent with more recent decisions finding that a bank seeking to apply deposited funds to a debt owed by the depositor has both a right of setoff and a banker's lien under Idaho Code § 45-808. *See*, *e.g.*, *Gill*, 701 P.2d at 197.

MEMORANDUM OF DECISION - 6

inconsequential value to the estate. Section 553(a) recognizes the "right of any creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case[.]"[8]

Section 553 does not create any new right of setoff, but merely acknowledges the existence of the doctrine of setoff under nonbankruptcy law, with some limitations. *In re Hipwell*, 97.1 I.B.C.R. 25, 26, 1997 WL 34584333, at *2 (Bankr. D. Idaho 1997). "[T]o invoke Section 553, a right to setoff must exist under nonbankruptcy law, and the debts sought to be offset must be mutual prepetition obligations arising from different transactions." *Id.* (citing *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995)). Mutuality is satisfied when the "parties have full and concurrent rights against each other." *Hipwell*, 97.1 I.B.C.R. at 27, 1997 WL34584333, at *3. In short, mutuality simply requires something be owed by both sides.

The right of setoff is permissive; its application is discretionary and in exercising such discretion the court relies on general principles of equity. *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996). The burden of proving an enforceable right of setoff lies with the party asserting

---

[8] Section 553 identifies certain exceptions to this general rule, none of which apply in the instant case.

MEMORANDUM OF DECISION - 7

that right. *Hipwell*, 97.1 I.B.C.R. at 26, 1997 WL 34584333, at *2 (citing *Newbery Corp.*, 95 F.3d at 1399).

The source of Wells Fargo's putative right to setoff is the contractual agreement between Debtor and Wells Fargo, as embodied in a Business Lending Disclosure. It provides, in part:

> In addition to all liens upon and rights of setoff against the monies, securities or other property of Guarantor given to Bank by law, Bank shall have a lien upon and a right of setoff against all monies, securities and other property of Guarantor now or hereafter in the possession of or on deposit with Bank or any Wells Fargo Affiliate, whether held in a general or special account or deposit or for safekeeping or otherwise, excluding however all IRA and Keogh accounts and every such lien and right of setoff may be exercised without demand upon or notice to Guarantor.

Doc. No. 77 at para. 3.

Trustee concedes that at the time Debtor's petition was filed, mutual obligations existed between Debtor and Wells Fargo, *i.e.*, Debtor owed Wells Fargo approximately $473,531.74 and, in turn, Wells Fargo was obligated to pay to Debtor, on demand, the amount in Debtor's deposit accounts with Wells Fargo. Thus, the question facing the Court concerns the effect of Wells Fargo's subsequent turnover of the funds to Trustee.

Section 553 is not self-executing. A creditor must take affirmative action to exercise its right of setoff. *In re Gehrke*, 158 B.R. 465, 468; *see also United Stated v. Continental Airlines (In re Continental Airlines)*, 134 F.3d 536, 541 (3rd

MEMORANDUM OF DECISION - 8

Cir. 1998) (stating that a creditor must exercise its right of setoff under § 553 in a timely fashion). In addition, a creditor may lose or waive its right to setoff by voluntarily turning over possession of funds subject to that right. *See Gehrke*, 158 B.R. at 468-69 (Bankr. N.D. Iowa 1993); *First Nat'l Bank of Litchfield v. O'Neil (In re Litchfield Constr. Mgmt., Inc.)*, 137 B.R. 98, 99 (Bankr. D. Conn. 1992); *Crispell v. Landmark Bank (In re Crispell)*, 73 B.R. 375, 380-81 (Bankr. E.D. Mo. 1987); *Nat'l Bank of Boaz v. Royal Crown Bottling Co. of Boaz, Inc. (In re Royal Crown Bottling Co. Of Boaz, Inc.)*, 29 B.R. 52, 54 (Bankr. N.D. Ala. 1981). *But see Scherling v. Chase Manhattan Bank, N.A. (In re Tilston Roberts Corp.)*, 75 B.R. 76, 79 (S.D.N.Y. 1987) (finding bank, that acted within hours to reverse a transfer to trustee, did not waive setoff rights).

*McCarty v. Nat'l Bank of Alaska, N.A. (In re United Marine Shipbuilding, Inc.)*, 158 F.3d 997 (9th Cir. 1998), does not require a contrary conclusion. In *McCarty*, the Ninth Circuit considered whether a creditor had waived its right of setoff. *Id.* at 998. There, the Internal Revenue Service ("IRS") mistakenly paid to the trustee a debtor's tax refund that was subject to a right of setoff held by the Maritime Administration ("MARAD"), acting on behalf of the United States Department of Transportation. *Id.* at 1000. Before the IRS paid the tax refund to the trustee, the bankruptcy court, in a separate bankruptcy case, had determined, and the district court affirmed, that MARAD had a valid right of setoff in the

MEMORANDUM OF DECISION - 9

refund. *Id.* at 1000-01. Nevertheless, the trustee and the National Bank of Alaska ("NBA"), one of the debtor's creditors, claimed that MARAD had lost its right to setoff because either (1) MARAD waived its right of setoff when the IRS inadvertently disbursed the funds to the trustee or (2) setoff could not be accomplished because MARAD had lost possession of the funds before the setoff was effectuated. *Id.* at 1001. The court concluded that MARAD had not waived its right of setoff. *Id.*

The facts here are unlike those in *McCarty*. In *McCarty*, MARAD clearly asserted its right of setoff before the tax refund was mistakenly turned over to the trustee, even securing a judicial determination that its right was valid, which was then affirmed by the district court on appeal. The *McCarty* court specifically distinguished its case from those where a creditor released the funds against which the setoff could be made before asserting any right of setoff. *Id.* at 1001-02. Here, Wells Fargo released the funds to Trustee before exercising its right of setoff.

Wells Fargo argues that the administrative hold it placed on Debtor's $23,795.00 general business account manifested an intent to exercise its right of setoff and that the release of the funds was inadvertent, thus precluding a finding of waiver. However, Wells Fargo's placement of the administrative hold does not itself constitute an exercise of its setoff right. *See Citizens Bank*, 516 U.S. at 19

MEMORANDUM OF DECISION - 10

(finding that bank's placement of an "administrative hold" on debtor's account and subsequent refusal to pay out on account was not an offset). The hold is merely a temporary refusal by Wells Fargo to pay its debt, giving it time to *promptly* seek relief from the automatic stay under § 362(d) and exercise its right to offset. *Id.* Instead of seeking relief from the stay to exercise its setoff right, Wells Fargo turned the funds over to Trustee. While the evidence indicates the initial turnover was inadvertent, Wells Fargo took no action to recover the funds from the time the mistake was discovered in early May, 2008, to when this Motion was filed on June 12, 2009.

Wells Fargo relies on its July 30, 2008 letter to Trustee, Ex. 303, as further evidence of its intention to exercise its right of setoff. However, up to the July 30 letter, Wells Fargo had taken no action, other than placement of the administrative hold, to assert its right of setoff, despite having several opportunities to do so. Wells Fargo did not request relief to exercise its setoff right in the April 15, 2008 motion for stay relief, and it failed to assert its setoff right in its April 16, 2008 proof of claim, both of these filings preceding the release of the funds. Moreover, almost two months after the July 30 letter, it again failed to assert its setoff right when it amended its proof of claim to reflect the liquidation of Debtor's inventory

MEMORANDUM OF DECISION - 11

and equipment, listing its entire claim as "unsecured."[9]

Finally, Wells Fargo contends it did not waive its right by surrendering the funds to Trustee because it was responding to Trustee's demand to turnover of the funds and his authority to make such a demand is derived from statute. This argument is unavailing. Section 542, which concerns turnover of property to the estate, specifically excuses creditors from having to pay to the trustee debts subject to setoff. *See* § 542(b); *Citizens Bank*, 516 U.S. at 20. Moreover, even if Wells Fargo was operating under the assumption that it was required to surrender the funds to comply with §§ 362, 542, or some other provision of the Bankruptcy Code, that did not relieve it from having to take some prompt or timely action to preserve and assert its rights. *Id.; see also Boggan*, 251 B.R. at 101-02. Wells Fargo failed to take any such action in this Court until it filed the instant Motion for abandonment, approximately one year after it turned the funds over to Trustee.

Upon consideration of the facts presented and the applicable authorities, the Court finds Wells Fargo waived its right to offset the subject funds against its claim. Here, mutuality was dependent on Wells Fargo retaining possession of the subject funds. Having voluntarily relinquished the funds to Trustee, Wells Fargo no longer owes anything to Debtor, mutuality is lost, and Wells Fargo's right to

---

[9] Under § 506(a)(1), a creditor's right of setoff under § 553 is treated as a secured claim to the extent of the amount subject to setoff.

MEMORANDUM OF DECISION - 12

setoff is extinguished.

### IV.    CONCLUSION

Given the conclusions reached by the Court on Wells Fargo's assertions of a banker's lien or a right of setoff, the funds are not of inconsequential value or benefit to the estate. Wells Fargo's motion to abandon under § 554(b) will be denied. Trustee shall submit a proposed order in accord with this Decision.

DATED: October 16, 2009

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE